IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WARNE KEAHI YOUNG, Individually and as Trustee Under the Declaration of Revocable Trust of Priscilla Young, Deceased,<br><br>        Plaintiff,<br><br>  vs.<br><br>THE BANK OF NEW YORK MELLON, a New York Corporation, AS TRUSTEE FOR THE CERTIFICATE HOLDERS, CWALT, INC., MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-20; AMBER FINANCIAL GROUP, LLC; COUNTRYWIDE HOME LOANS; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; ET AL.,<br><br>        Defendants.<br>_____ | CIV. NO. 10-00017 JMS-BMK<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS BANK OF NEW YORK MELLON, COUNTRYWIDE HOME LOANS, AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S MOTION FOR SUMMARY JUDGMENT |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS BANK OF NEW YORK MELLON, COUNTRYWIDE HOME LOANS, AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S MOTION FOR SUMMARY JUDGMENT**

## I.  INTRODUCTION

This action arises from a March 19, 2007 mortgage loan transaction

on the residence of Plaintiff Warne Keahi Young, Individually and as Trustee

Under the Declaration of Revocable Trust of Priscilla Young, Deceased ("Young" or "Plaintiff") located at 42 W. Kahaopea Street in Hilo, Hawaii ("the Hilo Property"). Plaintiff's First Amended Complaint ("FAC") alleges state and federal claims seeking damages and rescission of the mortgage transaction against (1) Bank of New York Mellon, as Trustee for the Certificate Holders, CWALT, Inc., Mortgage Pass-through Certificates Series 2007-20 ("BONYM"); (2) Amber Financial Group, LLC ("Amber"); (3) Countrywide Home Loans ("Countrywide"); and (4) Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively "Defendants"). BONYM, Countrywide, and MERS (collectively "Moving Defendants") have moved for summary judgment on all claims in the FAC.[1]

Based on the following, the Motion for Summary Judgment is GRANTED in PART and DENIED in PART. Summary judgment is entered against Plaintiff on all Counts except that (1) Counts V and VII remain as to Amber, and (2) Count V remains as to Moving Defendants to the extent Plaintiff seeks rescission under Hawaii Revised Statutes ("HRS") § 480-12, and attorney fees under HRS § 480-13.

---

[1] Amber Financial Group, LLC ("Amber") has not appeared in the action, but remains as a named Defendant. Although Amber has not appeared, where appropriate the court sua sponte dismisses Amber for the same reasons set forth by Moving Defendants. *See Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742-43 (9th Cir. 2008) (upholding dismissal in favor of a party which had not appeared, on the basis of facts presented by other defendants which had moved to dismiss) (citations omitted).

## II. **BACKGROUND**

A.     **Factual Background**

For purposes of this summary judgment motion, the court views the evidence in the light most favorable to Plaintiff.  *See, e.g.*, *Sullivan v. Oracle Corp.*, 662 F.3d 1265, 1270 (9th Cir. 2011).  Viewed in that light, the evidence indicates as follows.

On March 19, 2007, Priscilla Young ("Priscilla") executed mortgage documents on the Hilo Property.  Doc. No. 15, FAC ¶ 16; Doc. No. 69-1, Pl.'s Decl. ¶ 4.  The Hilo Property was previously unencumbered, and was financed for $430,482.01 along with closing costs and finance charges of $19,517.99, for a total loan amount of $450,000.  Doc. No. 69-4, Pl.'s Ex. C.  Amber was both the lender and mortgage broker.  Doc. No. 69-2, Pl.'s Ex. A, at 3; Doc. No. 69-3, Pl.'s Ex. B.  The loan application was taken by telephone by Amber employee Maryann Gambol ("Gambol").  Doc. No. 69-2, Pl.'s Ex. A, at 3.  The mortgage identifies Amber as the originating lender, with MERS as the mortgagee and nominee for Amber.  Doc. No. 69-22, Pl.'s Ex. 11.  The mortgage was assigned to BONYM on October 5, 2009.  Doc. No. 51-9, Moving Defs.' Ex. 7.

Priscilla was Plaintiff's grandmother.  Doc. No. 69-1, Pl.'s Decl. ¶ 4. At the time of closing (or immediately before closing), the Hilo Property was

owned, at least in part, by W.K. Young Partners, a Domestic Limited Partnership. *Id.* ¶¶ 16-19.[2]  W.K. Young Partners was formed in 1999, with Priscilla as the sole partner. *Id.* ¶ 12; Doc. No. 69-7, Pl.'s Ex. G.  After the partnership was formed, Priscilla transferred her residence -- the Hilo Property -- to the partnership as part of her capital contribution.  Doc. No. 69-1, Pl.'s Decl. ¶16.  Sometime before 2002, Plaintiff and his mother, Kawena Young, were added as partners. *Id.* ¶ 13; Doc. No. 69-6, Pl.'s Ex. F.  Priscilla died on October 15, 2008.  Doc. No. 69-1, Pl.'s Decl. ¶ 14.

Plaintiff attests that he is the "Successor Trustee Under the Declaration of the Revocable Trust of Priscilla Young." *Id.* ¶ 2.  He lived with Priscilla for at least thirty five years, and still lives at the Hilo Property. *Id.* ¶ 4.  In addition to being the successor trustee, he claims at all relevant times to have owned a portion of the Hilo Property through the "family limited partnership." *Id.* ¶ 3.

The W.K. Young Partners partnership agreement forbade withdrawal or return of partnership property except under specified circumstances. *Id.* ¶ 17.

_____

[2]  Specifically, according to a title insurance document, the Hilo Property was owned by "W.K. Young Partners, a Hawaii limited partnership, as to an undivided 1/2 interest, and Priscilla Ching Young, Trustee under the Declaration of Revocable Trust of Priscilla Ching Young . . . said trustee with powers to sell, lease, mortgage and other powers[.]"  Doc. No. 69-20, Pl.'s Ex. 9 at 4.

4

But, as part of the March 19, 2007 closing transaction, ownership of the Hilo Property was transferred (by documents signed only by Priscilla) from W.K. Young Partners and the Priscilla Ching Young Revocable Trust, as grantors, to Priscilla, as grantee.  Doc. No. 69-21, Pl.'s Ex. 10; Doc. No. 69-11, Wheeler Decl. at 4.  The mortgage loan was made directly to Priscilla, and the mortgage lists Priscilla as the borrower.  Doc. No. 69-22, Pl.'s Ex. 11.  The Hilo Property was then conveyed from Priscilla, as grantor, back to W.K. Young Partners and the Priscilla Ching Young Revocable Trust, as grantees.  Doc. No. 69-23, Pl.'s Ex. 12. The mortgage and transfer of ownership of the Hilo Property back and forth were all signed by Priscilla on March 19, 2007, and the documents were recorded simultaneously on March 27, 2007.  The temporary transfer of ownership to Priscilla was apparently done to satisfy Federal Home Loan Mortgage Corporation (Freddie Mac) or Federal National Mortgage Association (Fannie Mae) requirements, as such federally-backed loans may not be made to corporations or partnerships.  *See* Doc. No. 69-11, Wheeler Decl. at 4.

Plaintiff attests that Priscilla executed the note and mortgage on the Hilo Property without authority or consent from any W.K. Young Partner.  Doc. No. 69-1, Pl.'s Decl. ¶¶ 18-19.  Instead, Plaintiff contends that "Gambol, an employee and agent of Amber" contacted Priscilla, "talked her into making this

5

loan, and prepared all of the loan documents," including the transfer of ownership documents to and from Priscilla's name. *Id.* ¶ 25. "Gambol and Amber prepared all of the loan documents and told [Priscilla] where to sign." *Id.* ¶ 28.

Priscilla was ninety three years old on March 19, 2007 when she executed the mortgage documents. *Id.* ¶ 6. According to her doctor, at that time she was legally blind and almost deaf, and suffered from dementia. Doc. No. 69-31, Festerling Decl. ¶ 5. She was unmarried, unemployed, and living on Social Security and retirement benefits totaling approximately $1,700 per month. Doc. No. 69-1, Pl.'s Decl. ¶ 21. Moreover, shortly before she signed the documents, she had fallen in a care home and had sustained bleeding in her brain. *Id.* ¶ 23. She "was later diagnosed with long standing severe organic brain syndrome." *Id.* Plaintiff and Priscilla's doctor both attest that Priscilla would not have been able to understand the nature and terms of the closing documents she signed in March 2007. *Id.* ¶ 24; Doc. No. 69-31, Festerling Decl. ¶ 8.[3] Plaintiff contends that Gambol "knew or should have known that Priscilla Young did not have authority to withdraw the [Hilo Property] from the Partnership and also knew that Priscilla Young could not afford to make payments on this loan[.]" Doc. No. 69-1, Pl.'s

---

[3] Priscilla's signature on several of the closing documents is crossed out and re-written several times, suggesting that she had difficulty signing her name. *See* Doc. No. 69-11, Wheeler Decl. at 6; Doc. No. 69-28, Pl.'s Ex. 17.

Decl. ¶ 26.

Plaintiff points to several problems or inconsistencies with the loan documents that he alleges were violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, or are indications of fraud.  The loan application indicates the loan was an "A30 Conforming Fixed" loan (possibly referring to an "Agency 30 year" fixed rate mortgage), at 6.75 percent.  Doc. No. 69-11, Wheeler Decl. at 1.  But the loan period on the application is also listed as 480 months (or 40 years).  *Id.*; Doc. No. 69-12, Pl.'s Ex. 1; Doc. No. 69-15, Pl.'s Ex. 4.  The loan is indeed amortized over 480 months at an annual percentage rate of 7.127 percent, with monthly payments of $2,715.11.  Doc. No. 69-3, Pl.'s Ex. B.  The loan application also indicates Priscilla is married (she was unmarried), and that she was employed as "owner/property manager" (apparently referring to rental of rooms at the Hilo Property).  *Id.*; Doc. No. 69-18, Pl.'s Ex. 7.

As part of the transaction, Priscilla signed a standard "notice of right to cancel" form on March 19, 2007.  The form incorrectly lists the date of the transaction as March 16, 2007, so that the form reads as follows:

> You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:
> 1.  the date of the transaction, which is March 16, 2007; or
> 2.  the date you receive your Truth-in-Lending

disclosures; or

3.  the date you receive this notice of your right to cancel.

Doc. No. 69-5, Pl.'s Ex. D.  In the "How to Cancel" section, the form states "[i]f

you cancel by mail or telegram, you must send the notice no later than midnight of

March 22, 2007 (or midnight of the third business day following the latest of the

three events listed above)."  *Id.*  The date "March 22, 2007" was handwritten, and

was initialed by Priscilla.  *Id.*

Further, according to Charles Wheeler (Plaintiff's expert witness who

reviewed relevant documents), Amber "charged and or received [$1,327.50] as

additional 'back door' undisclosed compensation" from Countrywide as a "service

release premium."  Doc. No. 69-11, Wheeler Decl. at 7.[4]  Countrywide apparently

funded the loan through Amber.  *Id.*

## B.      Procedural Background

BONYM sought to foreclose on the mortgage by filing a Notice of

Intention to Foreclose Under Power of Sale on November 10, 2009, and an auction

was set for January 14, 2010.  Doc. No. 38-8.  Plaintiff filed this action on January

11, 2010, Doc. No. 1, and the foreclosure proceedings were apparently held in

---

[4]  There is some documentation indicating Amber required additional information from Priscilla (or Countrywide required further information from Amber) after the March 19, 2007 closing so that Amber could proceed to sell the note and/or mortgage.  *See* Doc. No. 69-19, Pl.'s Ex. 8; Doc. No. 69-30, Pl.'s Ex. 19.  These post-closing events are not fully explained in the memoranda, and are not pled in the FAC.

abeyance.

Upon motion by Countrywide and MERS, Plaintiff's initial Complaint was dismissed on May 5, 2010, with leave to amend.  Doc. No. 12. Plaintiff filed the FAC on June 1, 2010, alleging the following Counts:

> • Count I (against Amber, Countrywide, and MERS): Violations of the Truth in Lending Act ("TILA") entitling Plaintiff to rescission of the mortgage and recoupment of expenses.  Doc. No. 15, FAC ¶¶ 46-58;
>
> • Count II (against Amber, Countrywide, and MERS): Violations of TILA entitling Plaintiff to "loan damages." *Id.* ¶¶ 59-60;
>
> • Count III (against BONYM, Countrywide, and MERS): Violations of TILA resulting in "assignee [liability] for violations of originating mortgage lender." *Id.* ¶¶ 61-63;
>
> • Count IV (against Amber, Countrywide, and MERS): Violations of the Real Estate Settlement Procedures Act. *Id.* ¶¶ 64-68;
>
> • Count V (against all Defendants):  Unfair or deceptive acts or practices ("UDAP") under HRS Ch. 480. *Id.* ¶¶ 69-81;
>
> • Count VI (against Amber, Countrywide, and MERS): Violations of the Credit Repair Organizations Act. *Id.* ¶¶ 82-86;
>
> • Count VII (against Amber):  Fraud. *Id.* ¶¶ 87-95;
>
> • Count VIII (against all Defendants):  Civil conspiracy. *Id.* ¶¶ 96-102;
>
> • Count IX (against all Defendants):  Aiding and abetting. *Id.*

¶¶ 103-109;

• Count X (against BONYM):  Injunctive relief for lack of standing.  *Id.* ¶¶ 110-17;

• Count XI (against BONYM):  "Improper restrictions resulting from securitization leaving note and mortgage unenforceable." *Id.* ¶¶ 118-125;

• Count XII (against BONYM):  "Wrongful conversion of note -- mortgagor never consented to securitization."  *Id.* ¶¶ 126-132; and

• Count XIII (against all Defendants):  "Fraudulent concealment -- tolling of statute [of limitations]."  *Id.* ¶¶ 133-135.

Doc. No. 15.

Thereafter, on November 2, 2010, Plaintiff obtained new counsel.

Doc. No. 27.  The FAC had apparently not been served on BONYM, and new

counsel obtained service on BONYM on November 9, 2010.  *See* Doc. No. 31.

Default was entered against BONYM on December 1, 2010.  Doc. No. 32.

Meanwhile, BONYM resumed the non-judicial foreclosure process, with an

auction eventually set for March 1, 2011.  Doc. No. 38-10, Pl.'s Ex. G.  To stop the

sale, Plaintiff filed a Motion for Temporary Restraining Order ("TRO") on

February 18, 2011, Doc. No. 38-8, which became moot after BONYM agreed to

postpone the foreclosure and Plaintiff agreed to set aside the default against

BONYM.  Doc. No. 41.[5]

On September 7, 2011, Moving Defendants filed a Motion for

Summary Judgment.  Doc. No. 51.  Plaintiff filed his Opposition on October 31,

2011, and the Moving Defendants filed a Reply on November 7, 2011.  Doc. Nos.

69, 71.  A hearing was held on December 29, 2011.

In his Opposition, Plaintiff did not address and affirmatively withdrew

Counts IV, VI, VIII, IX, X, XI, XII, and XIII.  That is, the Motion is proceeding

only on Count I (TILA rescission), Count II (TILA damages), Count III (TILA

liability of assignees), Count V (HRS Ch. 480), and Count VII (Fraud against

Amber).

## III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who

fails to make a showing sufficient to establish the existence of an element essential

to the party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of*

_____

[5]  During the TRO proceedings, the court gave current counsel an opportunity to seek
leave to file a second amended complaint.  *See* Doc. No. 41, Court Minutes of Feb. 24, 2011.
The FAC, however, was not amended, and thus the action is proceeding based upon the
allegations in the FAC, which was drafted by prior counsel.

*Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the

court must draw all reasonable inferences on behalf of the nonmoving party.

*Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor." (citations omitted)).

## IV. <u>DISCUSSION</u>

Because Plaintiff does not oppose the Motion as to Counts IV, VI, VIII, IX, X, XI, XII, and XIII (and withdrew those Counts), the Motion is GRANTED as to those Counts.  The court proceeds to analyze the remaining Counts:  Count I (TILA rescission), Count II (TILA damages), Count III (TILA liability of assignees), Count V (HRS Ch. 480), and Count VII (fraud against Amber).

### A.    **Count I -- TILA Rescission**

Count I invokes 15 U.S.C. § 1635(a), which provides a right to rescind a loan transaction "until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing [the required material disclosures.]"  The rescission right, however, "is extended up to three years '[i]f the required notice or material disclosures are not delivered.'"  *Balderas*

*v. Countrywide Bank, N.A.*, --- F.3d ----, 2011 WL 6824977, at *1 (9th Cir. Dec. 29, 2011) (quoting 12 C.F.R. § 226.23(a)(3)).  In such a situation, the right expires "three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first[.]"  15 U.S.C. § 1635(f).  *See, e.g.*, *Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 703-05 (9th Cir. 1986) (applying § 226.23(a)(3)).

### 1.    *Notice of Right to Cancel*

Plaintiff asserts he is entitled to rescind under § 1635(f) because the Notice of Right to Cancel ("Notice") given to Priscilla stated the wrong transaction date -- March 16, 2007, not March 19, 2007.  He argues that this failure to properly disclose the right to rescind is a "clear violation of TILA."  Doc. No. 69, Pl.'s Opp'n at 9.  The court disagrees.

As to the form of a notice of a right to rescind, TILA's regulations provide in pertinent part as follows:

> Notice of right to rescind.  In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind. . . .  The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:
>
> (i) The retention or acquisition of a security interest in the consumer's principal dwelling.

(ii) The consumer's right to rescind the transaction.

(iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(iv) The effects of rescission, as described in paragraph (d) of this section.

(v) *The date the rescission period expires*.

12 C.F.R. § 226.23(b)(1) (emphasis added).  Here, although the transaction date on the Notice is wrong, the corresponding "date the rescission period expires" -- March 22, 2007 -- is correct.  That handwritten date was initialed by Priscilla. Doc. No. 69-5, Pl.'s Ex. D.  And Plaintiff has come forward with no evidence that the Notice is otherwise defective.  The Notice was signed and dated by Priscilla on March 19, 2007, where she acknowledges receiving two completed copies of the Notice.  *Id.*[6]  Plaintiff produces no evidence rebutting the presumption that arises from the written acknowledgment.  *See* 15 U.S.C. § 1635(c).[7]  Plaintiff has thus not

---

[6] Of course, whether Priscilla had the capacity to understand the transaction is a different question.

[7] 15 U.S.C. § 1635(c) provides:

Rebuttable presumption of delivery of required disclosures

Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof.

met his summary judgment burden to create a genuine issue of material fact that Priscilla was not provided with the proper notice of the right to rescind.

Plaintiff contends that the Notice was defective under *Semar*, which holds that a TILA notice omitting the expiration date is defective, thus extending the rescission period for three years -- even if the notice also "stated that the rescission right expired three business days after [the proper closing date]." 791 F.2d at 702. *Semar* recognized that TILA and its regulations "must be absolutely complied with and strictly enforced." *Id.* at 704 (citations and editorial marks omitted). "Technical or minor violations of TILA or [Regulation] Z, as well as major violations, impose liability on the creditor and entitle the borrower to rescind." *Id.* Thus, because TILA's regulation Z specifically "makes clear that failure to fill in the expiration date of the rescission form is a violation of the TILA," *Semar* held that rescission was appropriate even for that technical violation. *Id.* (quoting *Williamson v. Lafferty*, 698 F.2d 767, 768-69 (5th Cir. 1983)); *see also Balderas*, 2011 WL 6824977, at *4 (applying *Semar*, and indicating that a notice that provides the wrong rescission date violates TILA).

Here, however, the Notice contained no violation -- technical or otherwise -- of any specific provision of § 226.23(b)(1). This is unlike *Semar*, where the omission of the expiration date contradicted a particular regulatory

16

requirement.  Although the Notice that Priscilla signed gave an incorrect

transaction date of March 16, 2007, the Notice correctly reflected the relevant date

of when the rescission period expired -- March 22, 2007.[8]  Although *Semar*

requires that TILA be "absolutely complied with and strictly enforced," 791 F.2d at

702, this does not mean that *any* error on a right-to-cancel form is necessarily a

TILA violation.  Rather, an error (even if technical) that violates a TILA

requirement triggers the three-year rescission period.  *Id.* at 704.

### 2.      *"Service Release Premium"*

Plaintiff also contends that Amber's failure to disclose that it received

a post-closing "service release premium" ("SRP") of $1,327.50 constituted a TILA

violation.[9]  As Moving Defendants point out, however, Plaintiff has not identified

---

[8]  Because Priscilla received the Notice on March 19, 2007, the Notice gave the correct
rescission date even with the incorrect transaction date.  The Notice provided:

> You have a legal right under federal law to cancel this transaction, without cost,
> within three business days from whichever of the following events occurs last:
>
>     1.  the date of the transaction, which is March 16, 2007; or
>     2.  the date you receive your Truth-in-Lending disclosures; or
>     3.  the date you receive this notice of your right to cancel.

Doc. No. 69-5, Pl.'s Ex. 5.  The event that "occurs last" is the date Priscilla received the Notice,
which was March 19, 2007.  Three business days later was Thursday, March 22, 2007, which is
the rescission date written-in on the Notice.

[9]  "A service release premium (SRP) is a payment made by a lender to a mortgage broker
that is based on the amount of the loan referred to the lender to service."  *Bjustrom v. Trust One
Mortg. Corp.*, 322 F.3d 1201, 1204 n.3 (9th Cir. 2003).  An SRP is similar to a "yield spread
(continued...)

17

(and the court has not found) any provision of TILA that would require disclosure of this fee. Indeed, caselaw indicates TILA does not require specific disclosure of lender-paid fees such as yield spread premiums and SRPs. *See Hernandez v. Downey Savings & Loan Ass'n*, 2009 WL 704381, at *7-8 (S.D. Cal. Mar. 17, 2009) ("[T]he Federal Reserve Board has clarified that fees paid 'to a broker as a "yield spread premium" that are already included in the finance charge, either as interest or as points, should not be double counted' on the TILA Disclosure Statement.") (quoting 61 Fed. Reg. 26126, 26127 (1996)) (other citations omitted); *Bassett v. Ruggles*, 2010 WL 1525554, at *12 (E.D. Cal. Apr. 15, 2010) ("TILA and its implementing regulations do not require lenders to disclose a YSP as part of a loan's finance charge or to explain its impact on a loan's interest rate.").

Further, Plaintiff has not cited any other figures such as annual percentage rates, finance charges, amounts financed, total number of payments, or the payment schedule that were not disclosed. *See* 12 C.F.R. § 226.23(a)(3) n.48 (defining "material disclosures" to include such information).

---

[9](...continued)
premium" ("YSP"). *See id.* at 1204 ("At issue are the lender-paid broker fees denominated yield spread premiums . . . and service release premiums."); *see also RESPA Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers*, 64 Fed. Reg. 10080, 10081 (Mar. 1, 1999) ("Brokers also may receive indirect compensation from lenders or wholesalers. Such indirect fees may be referred to as 'back funded payments,' 'servicing release premiums,' or 'yield spread premiums.'").

In short, Plaintiff has not met his burden to set forth evidence that TILA's disclosure provisions were violated so as to trigger a right to rescission under 15 U.S.C. § 1635(f).  Accordingly, Defendants are entitled to summary judgment on Count I.[10]

## B.      Counts II and III -- TILA Damages and Liability of Assignees

Count II seeks damages under 15 U.S.C. § 1640 against Amber, Countrywide, and MERS for the same alleged TILA violations asserted in Count I in seeking rescission.  Likewise, Count III alleges that BONYM, Countrywide, and MERS are liable as assignees under 15 U.S.C. § 1641(a) for TILA violations that are "apparent on the face of the disclosure statement."  As analyzed above, however, Plaintiff has failed to establish that there were any TILA violations.  It follows that Plaintiff cannot obtain damages under § 1640 or § 1641(a).

In any event, even if there were viable TILA claims for damages, they are time-barred.  Claims for damages under TILA are subject to a one-year statute of limitations.  *See* 15 U.S.C. § 1640(e).  For violations of TILA's disclosure requirements, the period begins to run "when the plaintiffs executed their loan documents, because they could have discovered the alleged disclosure violations

---

[10]  Because Count I fails on the merits, the court need not rule on Moving Defendants' other arguments that (1) Plaintiff lacks standing to bring a TILA rescission claim, and (2) the FAC fails to state a claim for rescission because it does not allege an ability to tender back the loan proceeds.

and discrepancies at that time." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011) (citing 15 U.S.C. § 1640(e)); *see also King v. California*, 784 F.2d 910, 915 (9th Cir. 1986) (stating that the limitations period begins to run from the date of consummation of the loan).

Priscilla entered into the mortgage transaction on March 19, 2007, and this action was not brought until almost three years later on January 10, 2010. Plaintiff's TILA damages claim is time-barred unless Plaintiff can demonstrate that equitable tolling applies. There is no such evidence. Indeed, Plaintiff withdrew Count XIII, which specifically alleged (without any factual basis in the FAC) fraudulent concealment and/or equitable tolling.

In his Opposition, Plaintiff argues that BONYM may be liable for damages for failure to rescind the transaction after receiving a proper notice of a request for rescission -- a claim that would not be time-barred. *See, e.g.*, *Miguel v. Country Funding Corp.*, 309 F .3d 1161, 1165 (9th Cir. 2002) (stating that "15 U.S.C. § 1640(e) provides the borrower one year from the refusal of cancellation to file suit"). This theory, however, was not pled in the FAC. Moreover, leave to amend to plead such a claim would be futile as the court has already determined when analyzing Count I above that Plaintiff's request for rescission was not proper -- Plaintiff would thus not be entitled to TILA damages even if a failure-to-rescind

20

claim is not time-barred.  *See, e.g.*, *Rodenhurst v. Bank of Am.*, 773 F. Supp. 2d 886, 894-95 (D. Haw. 2011) ("[Defendant] could not be liable for failing to rescind when there was no such right.").

## C.     Count V -- HRS Chapter 480

Count V alleges that Amber, Countrywide, and MERS (but not BONYM) violated HRS Ch. 480 by (1) targeting financially unsophisticated and vulnerable consumers for inappropriate credit products; (2) failing to adequately disclose the true costs and risks of the loan and its inappropriateness for Priscilla; (3) making a loan with little net economic benefit to Priscilla for the primary purpose of generating fees and economic benefits; (4) making a loan based on the value of the collateral without regard to Priscilla's ability to repay the loan; (5) "[p]reying on Priscilla Young[,] an elderly woman"; (6) failing to provide Priscilla with a timely good faith estimate; and (7) attempting to deprive Priscilla of her legal right to cancel the loan.  Doc. No. 15, FAC ¶ 73.

### 1.     *Damages under Chapter 480*

Count V's allegations, even if supported by evidence, are legally insufficient as to any Defendant other than Amber.  Chapter 480 "provides for a cause of action against a 'person, firm, company, association or corporation' that actually committed an unfair and deceptive trade practice."  *Araki v. Bank of Am.*,

2010 WL 5625970, at *6 (D. Haw. Dec. 14, 2010) (quoting HRS § 480-3.1).

Plaintiff recognizes that neither Countrywide nor MERS was the originating

lender.  Doc. No. 15, FAC ¶ 62.  Thus, neither Countrywide nor MERS can be

liable for unfair or deceptive acts that may have occurred when the loan was

consummated.  *See, e.g.*, *Rodenhurst*, 773 F. Supp. 2d at 895-96.  And to the extent

Plaintiff argues that Countrywide, MERS, or BONYM could be liable as assignees,

Plaintiff's claim still fails because § 480-2 liability does not attach "merely because

one is an assignee."  *Araki*, 2010 WL 5625970, at *6.  Accordingly, Count V fails

to the extent it seeks damages from Moving Defendants under chapter 480.

### 2.   *Rescission under HRS § 480-12*

Unlike a Chapter 480 *damages* claim, a *rescission* claim under

Chapter 480 can stand against subsequent assignees if the contract is void (if, for

example, the consumer lacked capacity to enter into the contract).  *See, e.g.*, *Skaggs*

*v. HSBC Bank USA, N.A.*, 2010 WL 5390127, at *4-6 (D. Haw. Dec. 22, 2010)

("*Skaggs I*") (analyzing whether a defense of incapacity can be asserted against a

holder in due course seeking to foreclose, and concluding that a mortgage note that

is void under § 480-12 may be subject to such defenses against a subsequent

assignee).  As this court later summarized in *Skaggs v. HSBC Bank USA, N.A.*,

2011 WL 3861373 (D. Haw. Aug. 31, 2011) ("*Skaggs II*"):

22

> HRS § 480-12 provides that "[a]ny contract or agreement
> in violation of this chapter is void and is not enforceable
> at law or in equity." Although there is no evidence [the
> current holder of the note and mortgage] did anything "in
> violation of this chapter," § 480-12 can nevertheless
> provide a basis for rendering [the holder's] note and
> mortgage "void and unenforceable" based on certain
> types of unfair or deceptive acts or practices committed
> by others in the loan consummation process.

*Id.* at *7 (citing *Beazie v. Amerifund Financial, Inc.*, 2011 WL 2457725, at *11 (D. Haw. June 16, 2011)).[11]

Applying those principles, the record contains ample evidence supporting the FAC's allegation that Priscilla's impairments (*e.g.*, her advanced age, inability to see or hear, and her dementia) rendered her "incapable of reading, writing, and understanding re-finance mortgage documents." Doc. No. 15, FAC ¶ 18. Plaintiff attests to Priscilla's incompetence during relevant times. Doc. No. 69-1, Pl.'s Decl. ¶¶ 6, 21-24. Her doctor also indicates she was "legally blind and almost deaf, and was suffering from dementia." Doc. No. 69-31, Festerling Decl. ¶ 5. Construing the evidence in Plaintiff's favor, there is sufficient evidence that

---

[11] To the extent Plaintiff's claim for rescission under § 480-12 is based on TILA violations, the claim is barred. *See, e.g.*, *Kajitani v. Downey Sav. & Loan Ass'n*, 647 F. Supp. 2d 1208, 1220 (D. Haw. 2008) (holding that TILA preempts a claim under HRS Ch. 480, where both are based on a lender's actions and representations in originating the loan). TILA preemption, however, is not a basis for fully granting summary judgment because Plaintiff's Chapter 480 claim is based, at least in part, on circumstances beyond TILA violations such as alleged fraud in the loan consummation process.

the mortgage is void under HRS § 480-12, such that Plaintiff may continue to seek rescission under chapter 480.[12]  *See Skaggs II*, 2011 WL 3861373, at *10-11.

### 3.    Ability to Tender

The court has also recognized that even if chapter 480 is violated, rescission under § 480-12 does not necessarily or automatically follow.  Rather, a plaintiff seeking affirmatively to void a mortgage transaction under § 480-12 must be able to "place the parties in as close a position as they held prior to the transaction."  *Id.* at *11 (quoting *Beazie*, 2011 WL 2457725, at *13).  In order for Moving Defendants to obtain summary judgment on Plaintiff's affirmative claim seeking rescission under § 480-12, they "must first meet their burden under Rule 56 to 'establish that Plaintiff cannot tender the loan proceeds.'"  *Id.* at *12.  "If they do so, Plaintiff must then submit evidence to create a genuine issue of material fact that [he] can 'place the parties back to their original positions' to avoid summary judgment."  *Id.*

Here, as in *Skaggs II*, Plaintiff has met his burden to create a genuine

---

[12]  Moving Defendants argue that Plaintiff lacks standing to seek rescission because he was not a party to the mortgage transaction.  *See Untalan v. Alliance Bancorp*, 2011 WL 4704232 (D. Haw. Oct. 4, 2011).  The court concludes, however, that Plaintiff does in fact have standing to seek rescission under Ch. 480 -- some of the alleged fraud or deceptive acts involved conveying the Hilo Property from W.K. Young Partners to Priscilla and back (without consent), thus directly affecting Plaintiff's ownership interest.  The transaction resulted in an encumbrance on the Hilo Property -- a "void" mortgage on property that Plaintiff owns (at least in part).  That is, unlike in *Untalan*, Plaintiff can claim substantial injury under chapter 480 "arising out of the mortgage transaction."  *Id.* at *5.

24

issue of material fact that he could, if ordered, "place the parties in as close a

position as they held prior to the transaction." *Id.* at *11 (quoting *Beazie*, 2011

WL 2457725, at *13). Plaintiff attests that he has significant cash ($125,000) and

has the ability to sell the Hilo Property if necessary, and is otherwise "able and

willing to return to the status quo ante" if so ordered. Doc. No. 69-1, Pl.'s Decl.

¶ 31. "That is, the court cannot make a factual finding at this stage that Plaintiff

cannot tender loan proceeds back, *i.e.*, that Plaintiff cannot place the parties back to

their original positions." *Skaggs II*, 2011 WL 3861373, at *12.

### 4.      *Entitlement to Attorney Fees under HRS § 480-13*

Moving Defendants next argue that, regardless of whether Plaintiff

can obtain relief under § 480-12, Plaintiff would not be entitled to attorney fees

under HRS § 480-13. Again, as the court recognized in *Skaggs II*, the court cannot

reach whether Plaintiff would be entitled to fees under Chapter 480 at this stage:

> The question of attorney fees is not ripe -- whether
> Plaintiff would be entitled to attorney fees under Chapter
> 480 would not arise unless Plaintiff actually prevails on
> [his] rescission claim and actually proves that the note
> and mortgage are void and unenforceable. On the other
> hand, if Defendants prevail on this claim, the question of
> attorney fees never arises. The court cannot decide this
> abstract question at this stage. *See Graham v. Hartford
> Life & Accident Ins. Co.*, 501 F.3d 1153, 1161-62 (10th
> Cir. 2007) (concluding that a motion for fees was not ripe
> "when the presence of ongoing litigation precludes an
> informed determination of whether the moving party is in

fact entitled to attorney's fees under the relevant law")
(citations omitted); *Kapuwai v. City & Cnty. of Honolulu*,
121 Haw. 33, 40-41, 211 P.3d 750, 757-58 (2009)
(determining that lack of final decision on underlying
claim rendered question of entitlement to attorney fees
under Hawaii law "premature, *i.e.*, not ripe" so as to
constitute an improper "advisory opinion").

*Id.* at *13.

In sum, the Motion is GRANTED as to all claims against Moving

Defendants in Count V, except as to Plaintiff's claim for rescission under § 480-12

and his claim for attorney fees under HRS § 480-13.  Count V, however, remains

as to allegations against Amber.

## D.    Count VII -- Fraud

Count VII of the FAC makes allegations of fraud against Amber.  *See*

Doc. No. 15, FAC ¶¶ 88-95.  It alleges various misdeeds by Amber during the loan

consummation process, including that "[Amber] and/or DOE DEFENDANTS

falsely represented the amount of Priscilla Young's income and source of income

on the loan application it prepared," *id.* ¶ 89, and that "[Amber] and/or DOE

DEFENDANTS falsely represented the nature of the documents Priscilla Young

was told to sign in connection with the loan." *Id.* ¶ 90.  Count VII also incorporates

other relevant allegations (which are supported by evidence as explained when

addressing Count V) that Priscilla had impairments -- advanced age, blindness,

diminished hearing, dementia -- that rendered her incapable of understanding the mortgage documents.  *Id.* ¶ 18.  Whether or not Count VII states claims against Amber, however, it certainly makes no allegations (and there is no particularized evidence) of fraud committed by any Moving Defendant.

Accordingly, Moving Defendants are entitled to Summary Judgment on Count VII.  Count VII, however, remains as against Amber.

## V.  <u>CONCLUSION</u>

The Motion for Summary Judgment is GRANTED in PART and DENIED in PART.  Summary judgment is entered against Plaintiff Warne Keahi Young on all Counts of the First Amended Complaint except that (1) Counts V and VII remain as to Amber Financial Group, LLC, and (2) Count V remains as to Bank of New York Mellon, Countrywide Home Loans, and Mortgage Electronic Registration Systems to the extent Plaintiff seeks rescission under HRS § 480-12 and attorney fees under HRS § 480-13.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 30, 2012.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Young v. The Bank of New York Mellon et al.*, Civ. No. 10-00017 JMS-BMK, Order Granting in Part and Denying in Part Defendants Bank of New York Mellon, Countrywide Home Loans, and Mortgage Electronic Registration Systems, Inc.'s Motion for Summary Judgment